UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| GEORGE ARIC HOLTS, # 178133, ) | |
| ) | |
| Petitioner, ) | Case No. 1:06-cv-737 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| CINDI CURTIN, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent. ) | |
| _____) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. The *pro se* petition challenges petitioner's plea-based conviction on a misdemeanor charge of criminal sexual conduct, fourth-degree, MICH. COMP. LAWS § 750.520e. The state-court prosecution arose from an assault by petitioner and another prisoner against James DeFauw, while they were all prisoners at Camp Pugsley in Grand Traverse County, Michigan. The prosecutor originally charged petitioner with assault with intent to commit criminal sexual conduct involving penetration, MICH. COMP. LAWS § 750.520g(1), which, when coupled with petitioner's status as an habitual offender, exposed him to a life sentence. Pursuant to a plea agreement, petitioner was allowed to plead guilty to fourth-degree criminal sexual conduct, a misdemeanor punishable by not more than two years in prison.

After the state appellate courts denied petitioner's applications for discretionary review of his plea-based conviction, petitioner filed the present *pro se* habeas corpus action. His petition asserts the following claims:

      I.      The trial court abused its discretion in denying petitioner's motion to withdraw his guilty plea.

      II.     The conviction should be vacated because there was insufficient evidence that petitioner acted with a sexual purpose.

      III.    Trial counsel was constitutionally ineffective for failure to investigate the case, failure to inform him of possible defenses, and misrepresenting or withholding material information in order to induce a guilty plea.

The state Attorney General has filed an answer to the petition, supported by the records in the state trial and appellate courts, and petitioner has filed a reply. Upon review of the submissions of the parties and the state-court record, I conclude that petitioner has not established grounds for habeas corpus relief. I therefore recommend that the petition be denied on its merits.

**Proposed Findings of Fact**

The state-court prosecution in Grand Traverse County arose from an incident that occurred in Camp Pugsley, a prison camp of the Michigan Department of Corrections, on June 14, 2003. A prisoner, James DeFauw, complained to prison officials that petitioner and a prisoner named Reynolds had sexually assaulted him. DeFauw said that while he was in his bunk, prisoner Holts grabbed him and put his finger in DeFauw's buttocks while somebody held him down. Reynolds corroborated DeFauw's statement. Petitioner was charged in a felony complaint with assault with intent to commit criminal sexual conduct involving penetration, MICH. COMP. LAWS § 750.520g(1), a felony punishable by ten years in prison. The felony complaint also contained a notice under the habitual offender statute, MICH. COMP. LAWS § 769.12, that conviction of the underlying felony would be punishable by up to life imprisonment, because petitioner had already

been convicted of three felonies, namely, attempted larceny, carrying a concealed weapon, and kidnaping. (Felony Complaint, docket # 8-4).

        Petitioner and counsel appeared before a state district judge on November 13, 2003, for a preliminary examination. Petitioner waived the preliminary examination. At the same proceeding, petitioner was arraigned on the charge and informed of the possible life sentence. He entered a plea of not guilty. (Preliminary Examination Waiver and Arraignment Transcript, docket # 11).

        Petitioner and counsel appeared before the circuit court on November 21, 2003, for a change of plea proceeding. At the outset of the proceedings, the assistant prosecuting attorney informed the court that petitioner had agreed to plead to criminal sexual conduct, fourth degree, a misdemeanor, in exchange for dismissal of the sexual assault charge. The circuit judge placed petitioner under oath and conducted a plea colloquy. (*See* Plea Transcript, docket # 12). The court informed petitioner of the nature of the reduced charge and the maximum penalty of two years in prison. (*Id.*, 4-5). The court also stated that, because the offense was committed while petitioner was in prison, any sentence that he received would be served consecutively to his existing sentences. (*Id.*, 5). Petitioner affirmed his understanding of the plea agreement. (*Id.*, 6). Petitioner indicated his understanding of the rights that he would be giving up by pleading guilty and disavowed any threat or promise leading up to his plea. (*Id.*, 7-8).

        The court then questioned petitioner about the factual basis for his plea. In response to the court's first question, petitioner indicated that he engaged in contact with another person, James DeFauw, which included slight penetration. (Plea Transcript, 9). Petitioner testified that he and another prisoner decided to "go get DeFauw." (*Id.*, 11). He contended that this was horseplay,

and that he did not realize he was committing a crime. "We grabbed DeFauw off the bed for humiliation, because he was always playing games. We play games. We grabbed him out of the bed, one guy's laying on him, and I took my finger and poked it slightly on his butt." (*Id.*, 11). Petitioner testified that he used his finger to poke DeFauw "in the butt." (*Id.*). The court asked whether the victim was naked, and petitioner answered that he had his clothes on. The assistant prosecutor confirmed his understanding that petitioner had poked the victim "through his clothing in his butt." (*Id.*, 12). Although this was precisely what petitioner had just said, he then denied the accuracy of the prosecutor's statement: "I poked him in his buttock. I didn't go in between the crevices, I just poked him." (*Id.*, 12). The court then expressed doubt as to whether the necessary element of conduct done for a "sexual purpose" had been satisfied. (*Id.*, 12-13). Counsel for both sides then debated the issue briefly, but were interrupted by petitioner who stated, "I won't plead, let's go to the jury." (*Id.*, 13). Both attorneys indicated that that was fine with them. The court then recessed for approximately one-half hour.

At the outset of the renewed plea proceeding, the court again asked petitioner whether he wished to plead guilty to fourth-degree criminal sexual conduct, in exchange for dismissal of the more serious charge. Petitioner answered, "Yes, sir." (Plea Transcript, 14). The court turned again to the factual basis for the plea, and petitioner testified as follows:

> DEFENDANT HOLTS: Me and a inmate went down to John Defauw's house, he was watching TV with his back turned, he was on the floor, we turned him around I poked him in his buttock and after kissed him on the face.
>
> THE COURT: So you poked him with your finger and he had clothes on at that point?
>
> DEFENDANT HOLTS: He was tussling, and I think so. I was poking kind of hard.

>THE COURT:  You were poking him towards his anus?
>
>DEFENDANT HOLTS:  Yes, your Honor.
>
>THE COURT:  I wold like to ask counsel if the Court has complied with MCR 6.302, and have we established the elements of the defense?
>
>MR. PAPPAS:  Because defendant told you earlier he had done it to humiliate.
>
>DEFENDANT HOLTS:  To humiliate him.
>
>THE COURT:  Very good.

(*Id.*, 15-16).  Petitioner then entered his plea of guilty, which the court accepted on a finding that the plea was understanding, accurate, and voluntary.  (*Id.*, 16).

Petitioner and counsel appeared before the court on December 19, 2003, for sentencing.  (*See* Sentencing Transcript, docket # 13).  At the outset of the proceeding, defense counsel asked the court to make a number of factual amendments to the presentence report, including addition of a sentence indicating that petitioner denied that his finger penetrated the victim's buttocks.  (*Id.*, 5).  These amendments were ordered without objection.  (*Id.*, 5-6).  In light of this, the court scored the advisory guidelines to eliminate any points for penetration.  (*Id.*, 6).  After all factual and guideline objections were resolved in petitioner's favor, defense counsel spoke on his behalf, indicating that it was "clear to me that he [petitioner] does wish to proceed with his sentencing and has no objections with that." (*Id.*, 7).  Petitioner exercised his right of allocution, in which he informed the court that the incident arose from horseplay, but acknowledged that the victim did not consent and that things got blown out of proportion.  Petitioner apologized to the court and to the victim, while contending that the victim was lying.  (*Id.*, 10).  After reviewing the facts of the case, the court imposed a minimum sentence of one year, which fell within the middle of the

guideline range of 5-to-23 months. The maximum sentence of two years was established by law, as was the requirement that petitioner serve this time consecutively to his preexisting sentences. (*Id.*, 11). All monetary fines were waived.

On January 22, 2004, petitioner filed a motion to set aside his plea on the ground of ineffective assistance of counsel. By written opinion and order entered April 20, 2004, Circuit Judge Thomas G. Power, who had presided over the guilty plea proceeding, denied the motion. The court recited that it had reviewed the transcript of the plea, which showed that the plea was freely and voluntarily given. With regard to petitioner's claim of ineffective assistance of counsel, the court found as follows:

> This Court further finds that counsel's advice regarding acceptance of the People's plea-bargain was clearly within the range of competence of counsel in criminal cases. Defendant was facing a potential life sentence. The plea to criminal sexual conduct fourth degree carried with it a maximum two-year consecutive sentence. The setting aside of the plea would be a miscarriage of justice as it would subject the Defendant to a potential life sentence. Defendant has spent much of his adult life in the Michigan Department of Corrections. An extension of his sentence by a maximum of two years as opposed to several years or life was an obvious consideration for both counsel and the Defendant at the time the plea was tendered.

(Decision and Order, docket # 8-5, at pp. 2-3).

Petitioner filed a *pro se* application for leave to appeal to the Michigan Court of Appeals. The application raised the same essential grounds as the present habeas corpus petition: abuse of discretion in denying the motion to withdraw petitioner's plea, insufficiency of the evidence to support conviction for fourth-degree criminal sexual conduct, and ineffective assistance of counsel. (*See* Application found in Michigan Court of Appeal record, docket # 14). By order entered January 20, 2005, the state Court of Appeals denied leave to appeal for lack of merit in the grounds presented. (*Id.*). Petitioner filed a *pro se* application for leave to appeal to the state

Supreme Court, raising the same three grounds. (*See* Application found in Michigan Supreme Court record, docket # 15). By order entered July 26, 2005, the Michigan Supreme Court denied leave to appeal. (*Id.*).[1]

### **Applicable Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied sub nom.*, *Texas v. Penry*, 126 S. Ct. 2862 (2006); *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d). Even if a state court disposes of a constitutional claim without articulating its analysis, deferential review is required. The Sixth Circuit describes the review AEDPA requires under such circumstances as "modified AEDPA deference." *Moldonado v. Wilson*, 416 F.3d 470, 475-76 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1038 (2006); *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005). Under the modified standard, "a federal habeas court must

---

[1] Petitioner has informed the court that the state Supreme Court ultimately appointed an attorney to represent him in post-conviction matters, but that the attorney was granted leave to withdraw, apparently pursuant to *Anders v. California*, 386 U.S. 738 (1967).

conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. The independent review, however, is not a full *de novo* review of the claims. As we held in *Harris* [*v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000)], This standard of review requires the court to conduct a careful review of the record and applicable law, but nonetheless, bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law." *Maldonado*, 416 F.3d at 476. *De novo* review is restricted to instances where the state court did not address the merits of a claim. In that limited set of circumstances, "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007); *Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006); *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005) ("[W]hen a claim has not been adjudicated on the merits in State Court proceedings, and has not been procedurally defaulted, we look at the claim *de novo* rather than through the deferential lens of AEDPA.") (citations omitted); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

       The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407; *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001).

"It is important to note, however, that 'an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law.'" *Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir. 2005) (quoting *Williams*, 529 U.S. at 409). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *see Filaggi v. Bagley*, 445 F.3d 851, 853 (6th Cir. 2006); *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410; *see Bell v. Cone*, 535 U.S. at 694; *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006) ("The proper inquiry under the

'unreasonable application' analysis is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect."); *Payne v. Bell*, 418 F.3d 644, 653 (6th Cir. 2005) ("A state court decision involves an 'unreasonable application' of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts before it in an objectively unreasonable manner.") (citations omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d at 943. The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003) (quoting *Williams*, 529 U.S. at 412); *see Lundgren*, 440 F.3d at 763. Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see Foley v. Parker*, 481 F.3d 380, 385 (6th Cir. 2007) ("In analyzing whether a state court decision is 'contrary to' or an 'unreasonable application' of clearly established Supreme Court precedent, a

federal court may only look to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision."); *Spisak v. Mitchell*, 465 F.3d 684, 690 (6th Cir. 2006); *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004) (describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry"). "'Federal Courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.'" *Payne*, 418 F.3d at 656 (quoting *Cone v. Bell*, 543 U.S. at 455). "The state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.'" *Dennis*, 354 F.3d at 517-18 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

## Discussion

### I.     Withdrawal of Guilty Plea

The *pro se* petition presents as its first ground for relief the claim that the trial judge abused his discretion in denying petitioner's motion to withdraw his guilty plea. This ground does not state a claim for habeas corpus relief. The federal district courts may grant a writ of habeas corpus only if a state prisoner is in custody in violation of the federal Constitution or laws. 28 U.S.C. § 2254(a). The right to withdraw a guilty plea is created by state statute, and a claim that the state judge abused his discretion in refusing to grant leave to withdraw the plea frames a pure issue of state law. The Sixth Circuit has made it clear that a federal court's scrutiny of a state guilty plea must be limited to federal due-process standards; the state courts' failure to adhere to the requirements of state law cannot form the basis for habeas corpus relief. *See Riggins v. McMackin*, 935 F. 2d 790, 794-95 (6th Cir. 1991). It is clear that the ability to withdraw a knowing and

voluntary guilty plea is a matter of state law and does not arise under the Constitution. *See Carwile v. Smith*, 874 F.2d 382, 385 (6th Cir. 1989); *Scott v. Mancusse*, 429 F.2d 104, 109 (2d Cir. 1970).

Read with the required liberality, the habeas corpus petition may be construed to assert a federal due-process challenge to the validity of the guilty plea. In addition to alleging that the trial court abused its discretion in denying petitioner's motion to withdraw his plea (a claim not cognizable in habeas corpus), petitioner also asserts that his plea was not entered in a voluntary, knowing and intelligent manner. The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.1991).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon

petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20, 29-30 (1992).

In the present case, the state has submitted the transcript of petitioner's guilty plea before Judge Power, who carefully questioned petitioner concerning both the voluntariness of his plea and his understanding of the charge, the penalties he faced if convicted, and the rights that he forfeited by pleading guilty. (*See* Plea Transcript, docket # 12). When petitioner expressed a disinclination to proceed with the plea, the court adjourned the proceedings to allow him a further opportunity to discuss the matter with counsel. (Tr., 13-14). The court recessed for approximately one-half hour, at which time petitioner returned and informed the court that he would like to plead guilty. (*Id.*, 14). At the end of the plea colloquy, the court affirmatively found that the plea was knowing and voluntary. (*Id.*, 16). Five months later, when petitioner moved to withdraw his plea, the circuit judge again reviewed the plea transcript and made independent findings of the voluntariness of the plea. A presumption of correctness attaches to these findings. *Garcia*, 991 F.2d at 326.

The allegations in the habeas corpus petition do not sustain petitioner's "heavy burden" to overturn these state findings, *Garcia*, 991 F.2d at 328, nor do they demonstrate that the state trial judge's decision was an unreasonable application of Supreme Court authority, as required by AEDPA. 28 U.S.C. § 2254(d). Petitioner presents a diffuse and often irrelevant series of challenges to the validity of his plea. Most of his challenges are based upon Rule 11 of the Federal Rules of Criminal Procedure and the requirements enunciated by the federal courts for pleas governed by Rule 11. It is clear, however, that Rule 11 does not apply to state-court guilty plea proceedings. *See Riggins*, 935 F.2d at 795; *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975).

Petitioner also presents extensive arguments concerning the adequacy of the factual basis for the plea, including whether or not the victim was clothed at the time, a fact that ultimately is irrelevant to his guilt.[2] The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. The state courts are not constitutionally required to establish a factual basis for an otherwise voluntary and intelligent plea. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Roddy*, 516 F.2d at 1385; *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (*en banc*) (implicitly overruled on other grounds by *Custis v. United States*, 511 U.S. 485 (1994)). Further, petitioner asserts that he pled guilty only to avoid a possible life sentence and that he could not risk a trial before an all-white Northern Michigan jury. The Supreme Court has long recognized that a guilty plea resulting from the weighing of such practical factors is voluntary, even though a defendant faces unpalatable choices. *See, e.g., Brady v. United States*, 397 U.S. at 750-51 (guilty plea not involuntary merely because defendant feared death penalty if found guilty at trial). In the present case, petitioner did indeed face a life sentence as a habitual offender if he were convicted of the original assault charge. He avoided that eventuality by pleading guilty to a misdemeanor charge. Nothing in the record indicates that his choice between those two options was unintelligent or involuntary.

---

[2] The misdemeanor offense of fourth-degree criminal sexual conduct is established by proof of "sexual contact" made in a number of alternative circumstances, including by force or by surprise. MICH. COMP. LAWS §§ 750.520e(b)(i), (v). Sexual contact includes intentional touching of the victim's intimate parts "or the clothing covering the immediate area" of the victim's intimate parts, if done for a sexual purpose, or in a sexual manner to, among other things, "inflict humiliation." MICH. COMP. LAWS § 750.520a(n)(ii) (eff. Apr. 1, 2003). Petitioner's allocution was sufficient to establish each of these elements.

Petitioner has not met the heavy burden of setting aside the state court's finding that his plea was knowing and voluntary under the AEDPA standard. His challenge to the validity of his guilty plea should therefore be rejected.

### II. Inadequate Factual Basis

Petitioner's second claim for habeas corpus relief is that there was an insufficient factual basis to charge him with assault with intent to commit criminal sexual conduct involving penetration under Mich. Comp. Laws § 750.520g(1). Petitioner relies on cases such as *In re Winship*, 397 U.S. 358 (1969), in which the Supreme Court articulated the requirement that the prosecution prove beyond a reasonable doubt each element of a crime for which a criminal defendant is convicted. The problem with petitioner's argument is that he was never convicted of assault with intent to commit criminal sexual conduct. Pursuant to the plea agreement, he was convicted of the misdemeanor charge of fourth-degree criminal sexual conduct. The Supreme Court has never held that a valid guilty plea to a lesser charge may be overturned because of a lack of evidence to support a previous charge. This habeas corpus claim is therefore utterly frivolous.

If petitioner is attempting to challenge the factual basis for the crime of conviction, fourth-degree criminal sexual conduct, his claim is likewise untenable. As noted above, there is no constitutional requirement that a state establish a factual basis for a guilty plea. "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995); *see Spiridigliozzi v. United States*, 117 F. App'x 385, 390 (6th Cir. 2004). By pleading guilty, petitioner gave up his right to challenge the factual

basis for his conviction on the sufficiency of the evidence. *See Menna v. New York*, 423 U.S. 61, 62 n.2 (1975); *United States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987), *accord United States v. Hawkins*, 8 F. App'x 332, 334 (6th Cir. 2001) (Appellant "has waived his sufficiency challenge by entering a constitutionally valid and unconditional guilty plea."). Furthermore, as demonstrated in footnote 2 above, the misdemeanor plea established each essential element of fourth-degree criminal sexual conduct. Consequently, however construed, petitioner's second claim for habeas corpus relief is meritless.

### III. Ineffective Assistance of Counsel

Petitioner also claims that his trial counsel was ineffective. In support of this assertion, petitioner makes various accusations against his attorney, including the following: petitioner was prejudiced by his attorney's consistent reminder that petitioner would receive a life sentence if he were convicted on the more serious charge; counsel insisted that petitioner would be found guilty if he exercised his right to a trial; counsel told petitioner that a white Grand Traverse County jury would like to convict him; and counsel failed to "discuss a possible defense," which petitioner fails to identify.

It is well settled that a guilty plea may be rendered involuntary if it was induced by the ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). To prevail on a claim of ineffectiveness, a petitioner must allege facts showing both constitutionally ineffective performance and resulting prejudice. *Id.* at 58-59. In the context of a guilty plea, the "prejudice" standard requires a petitioner to show a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial. *Id.* at 59. Where a petition does not allege facts showing prejudice, summary dismissal of the petition is appropriate. *Id.* at 60.

Most of the allegations of ineffective assistance of counsel demonstrate a fundamental misunderstanding of both the role of counsel and the concept of constitutional ineffectiveness. For example, counsel's insistent focus on the possibility of a life sentence on the underlying charge could not possibly be deemed constitutionally ineffective. Likewise, counsel's insistence that the demographics of a particular jury venue might not be favorable for a particular client falls well within competent counsel's duties. Nevertheless, even if one or more of petitioner's diffuse accusations against his counsel is deemed sufficient under the performance prong of *Hill v. Lockhart*, the fact remains that petitioner has not alleged the existence of prejudice. Nowhere alleges that, but for counsel's alleged bad advice, petitioner would have insisted on a trial on the original charge. Although petitioner has filed voluminous documents in state trial and appellate courts, and again in this court, in none of those papers did he ever assert that but for attorney error, he would have insisted on a trial on the original charge. Under the clear holding of the Supreme Court, in the absence of such an allegation, a petition is subject to summary dismissal. *Hill*, 474 U.S. at 60.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.


Dated:  June 21, 2007                             /s/  Joseph G. Scoville
                                                  United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).